MANDATE

23-993
*Lomanto v. Agbelusi*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of July, two thousand twenty-four.

Present:

    REENA RAGGI,
    EUNICE C. LEE,
    BETH ROBINSON,
        *Circuit Judges.*

─────────────────────────────────────

ANGELO LOMANTO,

        *Petitioner-Appellant*,

    v.                      No. 23-993

ANTHONIA ADUKE AGBELUSI,

        *Respondent-Appellee.*

─────────────────────────────────────

| | |
|---|---|
| For Petitioner-Appellant: | ELISHA J. KOBRE (Ryan Dean, Lauren Green, *on the brief*), Bradley Arant Boult Cummings, LLP Dallas, TX. |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jul 30 2024

MANDATE ISSUED ON 07/30/2024

| | |
|---|---|
| For Respondent-Appellee: | BRENDAN A. BLASE (Amelia T.R. Starr, Dara L. Sheinfeld, Meredith Manning, Ryann Moelis, Zoë Smith, *on the brief*), Davis Polk & Wardwell LLP<br>New York, NY. |

Appeal from a June 22, 2023 judgment of the United States District Court for the Southern District of New York (Oetken, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Angelo Lomanto appeals from an order of the district court denying his petition for repatriation to Spain of his two minor children, R.A.L. and S.M.L., from the United States by their mother, Respondent-Appellee Anthonia Aduke Agbelusi, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (the "Hague Convention"), and its implementing statute, the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 *et seq.* ("ICARA").

The parties are both non-American citizens who met in Spain in 2006. They resided there together and had two children. On June 26, 2021, Agbelusi left Spain with R.A.L. and S.M.L., who were then twelve and four, to visit her mother in New York for the summer. Lomanto had provided his written permission for the children to travel with their mother to the United States. On August 24, 2021, Agbelusi notified Lomanto that she planned to stay in New York permanently with the children. Lomanto objected and initiated legal proceedings in Spain, in which Agbelusi participated, to try to obtain the return of the children. In September 2021, the Spanish trial court

2

issued an order concluding that the habitual residence of the children was Spain, that Lomanto did not consent to the children's staying in New York, and that Agbelusi should return them to Spain. Agbelusi filed an appeal, which was unsuccessful. On August 26, 2022, Lomanto filed the current action in federal district court in New York.

Although there is no dispute that a *prima facie* case of wrongful retention was established under the Hague Convention, the district court held that Agbelusi met her burden to establish multiple affirmative defenses to return of the children, which Lomanto now challenges on appeal. In addition, Lomanto maintains that even if these defenses were established, the district court nevertheless erred by (1) declining to exercise its discretion to repatriate the children notwithstanding Agbelusi's defenses, (2) failing to accord comity to the Spanish court orders, and (3) proceeding with the first day of trial without a Spanish-language interpreter.

While we review the district court's interpretation of the Convention and its application to the facts *de novo*, we review its factual determinations only for clear error. *See Mota v. Castillo*, 692 F.3d 108, 111 (2d Cir. 2012). The clear error standard is deferential, and "[w]e must accept the trial court's findings unless we have a definite and firm conviction that a mistake has been committed." *Tereshchenko v. Karimi*, 102 F.4th 111, 124 (2d Cir. 2024) (alteration in original) (quoting *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013)). We assume the parties' familiarity with the remaining facts and record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

I. **One Year and Now-Settled Exception**

Article 12 of the Hague Convention requires a court to order repatriation of a child if Hague Convention proceedings are initiated within one year of the child's wrongful removal or retention,

3

unless an exception applies. Hague Convention, art. 12. If the proceedings are commenced after the one-year period, the court "shall also order the return of the child, *unless it is demonstrated that the child is now settled in its new environment.*" *Id.* (emphasis added). The respondent bears the burden of proving this exception "by a preponderance of the evidence." 22 U.S.C. § 9003(e)(2)(B).

The district court ruled that Lomanto's petition was filed more than a year after the wrongful retention of the two children and that the children were "now settled" in their new environment. Lomanto appeals both the district court's determination that he commenced proceedings after the one-year period, as well as its finding that the children were now settled in the United States, such that their return to Spain was not required under Article 12 of the Convention.

We see no reason to disturb the district court's finding that wrongful retention began on August 24, 2021, the date that Lomanto learned that the children would be staying in New York, thus making his petition filed on August 26, 2022 beyond the one-year deadline. This finding was not clearly erroneous. *See Souratgar*, 720 F.3d at 103 (observing that clear error standard is "significantly deferential" (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993))). The district court based its finding on Lomanto's communication with R.A.L. on August 24, 2021, his communication with Agbelusi later that day, and the police reports that Lomanto filed the next day on August 25, 2021, where he reported that the children were missing as of August 24, 2021, and that he "want[ed] to put on record that he ha[d] not given his consent for his children to stay" in the United States. *Lomanto v. Agbelusi*, 2023 WL 4118124, at *3 (S.D.N.Y. June 22, 2023) (internal quotation marks omitted).

4

These events made clear that Agbelusi advised Lomanto on August 24, 2021 that she would retain the children in New York over his objection. In a closely analogous case, we affirmed a district court's determination that the date the child's mother advised the father "that she would not be returning with the [c]hildren" to their country of habitual residence was the date of wrongful retention. *Marks ex rel. SM v. Hochhauser*, 876 F.3d 416, 421–22 (2d Cir. 2017).

The district court did not err in declining to adopt one of the later dates Lomanto proposed as the beginning of the children's wrongful retention—including the date Lomanto asked Agbelusi via text message to return the children or the date the parties originally had agreed that the children would return. We have held that wrongful "retention" occurs on a fixed date—it is not a continuing act. *Marks*, 876 F.3d at 422. And on this record, for the reasons noted above, the district court properly found that Agbelusi's wrongful retention began on August 24, 2021. Thus, the district court correctly concluded that Lomanto's filing of Hague Convention proceedings on August 26, 2022, occurred after the one-year period that began on August 24, 2021.

We also identify no error in the district court's conclusion that R.A.L. and S.M.L. were "now settled" in New York. Because the now-settled analysis is a mixed question of fact and law, the district court's factual findings as to each of the relevant factors are reviewed for clear error, while its application of the Convention based on those factual findings is reviewed *de novo*. *See Blondin v. Dubois,* 238 F.3d 153, 158 (2d Cir. 2001). The district court carefully considered the relevant factors, under *Lozano v. Alvarez*, including the age of the children, the stability of their residence in the new environment, whether they attend school consistently, whether they participate regularly in community or extracurricular activities, the respondent's employment and financial stability, whether the children have friends and relatives in the new environment, and the

5

immigration status of the children and the respondent. 697 F.3d 41, 57 (2d Cir. 2012). Upon reviewing the record as a whole, we agree that R.A.L. and S.M.L. are now settled in the United States. The record evidence, including the children's regular school attendance, involvement in their church community, and strong relationships with friends and relatives in the area, all support the conclusion that they are now settled. And, although "a shelter may not be an ideal environment," the district court found "in this case" that the shelter where the children live with their mother "is a stable environment that provides [the family] with their own apartment, and also provides community and resources," such as summer camp and an afterschool program. *Lomanto*, 2023 WL 4118124 at *15. Even if their unresolved immigration status counsels against a conclusion that they are now settled, in the overall balance, we conclude that the factors as a whole militate toward a now-settled finding, and thus, the district court correctly applied the exception. *See Lozano*, 697 F.3d at 57–58 (requiring courts to "balance many factors" and declining to give controlling weight to child's lack of lawful immigration status).

## II. <u>Mature Child Exception</u>

Article 13 of the Hague Convention "permits a court to refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." *Blondin*, 238 F.3d at 166 (internal quotation marks omitted). "[U]nder this provision, a court may refuse repatriation *solely* on the basis of a considered objection to returning by a sufficiently mature child." *Id.* Whether a child is "old enough and mature enough" for his "views to be considered" is a question of fact, as is the determination that a child actually objects to returning to his country of habitual residence. *Id.* at 158.

6

We identify no clear error in the district court's conclusion that the older child, R.A.L., was of sufficient age and maturity to "take account of his views," that his objection was a result of his own "independent thinking," and that his articulation of reasons for not wanting to return to Spain was "rational, logical, and clear." *Lomanto*, 2023 WL 4118124, at *17. The court made its findings about R.A.L.'s objection based on the expert evaluation of a licensed clinical psychologist and the court's own *in camera* interview with the children. Insofar as Lomanto characterizes R.A.L.'s views as expressing only a "preference" for remaining in New York, rather than an "objection" to returning to Spain, this is a factual determination on which we defer to the district court, which engaged directly with the child, absent clear error. In light of R.A.L.'s professed concern that, if he were returned to Spain, his father would not permit him to see his mother—a concern that he reiterated even after the district court told him that his mother could seek custody or visitation in Spain—we identify no such error or abuse of discretion.[1]

## III. Equitable Discretion

Lomanto maintains that even if the district court found that the children were settled in the United States and that R.A.L. objected to returning to Spain, the district court nevertheless abused its discretion in not ordering the children to return to Spain given Agbelusi's "premeditated abduction" of the children, her "purposeful[] estrang[ement] [of the children] from their father, with whom they had a close and loving relationship," and her defiance of orders from the Spanish courts. Appellant's Br. at 54. We disagree. While a district court may exercise its discretion

---

[1] Lomanto does not challenge the district court's conclusion that, if R.A.L. expressed an objection to returning to Spain, S.M.L. also should be permitted to stay in the United States to avoid separating the brothers, even though S.M.L. is not himself mature enough for his views to be taken into account.

7

to order the return of children in order to further the aims of the Convention even in cases where affirmative defenses are established, *see Blondin v. Dubois*, 189 F.3d 240, 246 n.4 (2d Cir. 1999), here, the district court declined to do so, explaining that, in addition to deterrence of wrongful removal or retention, the Convention has "an interest in the welfare of the children and their interests in remaining settled." *Lomanto*, 2023 WL 4118124, at *18. Thus, the district court denied repatriation based on the children's interests in remaining settled together in their new close-knit community in New York, and based on R.A.L.'s objection to returning to Spain. The district court's refusal to order return was not an abuse of discretion. *See Custodio v. Samillan*, 842 F.3d 1084, 1092 (8th Cir. 2016) (holding that district court acted within its discretion in denying return of children, even though doing so would effectively reward mother for wrongful removal and retention of children because mother had disobeyed custody orders from Peruvian court compelling her to return them).

IV. **Comity**

Lomanto also argues that the district court erred in failing to accord comity to the Spanish court orders that found that Agbelusi had wrongfully retained the children and ordered that she return them to Spain. The Spanish court orders—both at the trial and appellate level—centered on the "exercise of guardianship powers" and found that Agbelusi did not have the authorization to "change the children's place of residence." App'x at 2335, 2323. But these findings were not in dispute in Lomanto's petition before the district court. As noted, the Spanish court decisions established the *prima facie* case of wrongful retention, but those decisions did not decide a claim for return pursuant to the Hague Convention and did not address or resolve any of Agbelusi's affirmative defenses to such a claim. Indeed, the Spanish appellate court decision

8

stated expressly that its authority to determine whether the children were wrongfully retained "may be parallel . . . with the international return proceedings . . . of the 1980 Hague Convention," and that the Spanish court's determination of wrongful retention was "without prejudice to decision of the judicial authority of the requested country." *Id.* at 2338. Thus, the district court correctly determined that the Spanish courts had not purported to rule on Agbelusi's affirmative defenses but had determined only that the children's retention was wrongful, and that the district court therefore had jurisdiction to adjudicate Agbelusi's defenses. *See Ozaltin v. Ozaltin*, 708 F.3d 355, 377 n.27 (2d Cir. 2013) (explaining that "[t]he removal of a child from the country of habitual residence does not foreclose the possibility of resolving certain issues in that country's judicial system," namely whether "'the removal or retention was wrongful within the meaning of Article 3 of the Convention'" (quoting Hague Convention, art. 15)); *see also Abou-Haidar v. Vasquez*, 945 F.3d 1208, 1214 (D.C. Cir. 2019) (recognizing that court "where the child currently is located" has jurisdiction to adjudicate Hague Convention petition (citing Hague Convention, art. 12)).

## V.    Due Process

Finally, we are unpersuaded by Lomanto's argument that his due process rights were violated when the district court conducted the first day of the six-day bench trial without providing him with a Spanish interpreter. For months, the district court had informed Lomanto and his retained counsel that it was his responsibility to provide someone to interpret for him during the upcoming trial—and that this interpreter did not need to be a paid professional and could appear virtually. Despite Lomanto's failure to secure an interpreter, the district court arranged for Lomanto to receive the assistance of *pro bono* certified interpreters starting on the second day of trial. App'x at 768, 999. Moreover, Lomanto does not explain how the lack of an interpreter

9

on the first morning of trial deprived him of a meaningful opportunity to be heard before the district court.[2] *See West v. Dobrev*, 735 F.3d 921, 929 (10th Cir. 2013) (noting that "a district court has a substantial degree of discretion in determining the procedures necessary to resolve a petition filed pursuant to the Convention and ICARA" in an expeditious manner). Lomanto "received a meaningful opportunity to be heard" over the six-day trial, and "[t]hat is all due process requires in the context of a Hague Convention petition." *Id.* at 932.

For the reasons set forth above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[2] Lomanto's counsel expressly consented to proceeding without an interpreter during the afternoon of the first day of trial, because her client was absent, watching R.A.L. play basketball.